DOUGHERTY BROTHERS TENT & AWNING COMPANY V.
THE PERU-VAN ZANDT IMPLEMENT COMPANY.

No. 14,818   (89 Pac. 900.)

SYLLABUS BY THE COURT.

SALES—*Vendee's Right to Disaffirm Contract Lost by Retaining Control of Goods.* If a buyer who has the right to disaffirm a contract of sale and to decline to receive goods because of delay in delivery does receive them, and then keeps them for the declared purpose of obtaining general damages occasioned by the delay, he becomes liable, in an action by the seller on the contract, for the price.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed April 6, 1907. Reversed.

*H. Whiteside,* and *A. W. Tyler,* for plaintiff in error.
*Prigg & Williams,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the defendant for the price of a tent, and was defeated.

The defendant wrote to the plaintiff stating that it needed a tent about thirty-five by fifty feet in size in which to exhibit vehicles at a fair to begin on September 15, 1902, and to end on September 20, 1902. Selling prices and rental prices for four days' time were requested. The plaintiff in reply described a tent and quoted prices both for a sale and for rent for one week. After further correspondence relating to the tent offered the defendant telegraphed the plaintiff to ship it as per letters.

On account of an accident shipment was delayed and the tent did not reach the defendant until the fair was about to close. Upon delivery by the carrier the defendant took the tent and paid the freight. The plaintiff sent several statements for the price of the tent, but heard nothing from the defendant until, by a letter of December 4, 1902, the defendant announced that it

was ready to deliver the tent on board the cars at Hutchinson, Kan., when the plaintiff paid it damages for delay in forwarding the tent and freight from St. Louis to Hutchinson.

When sued for the price of the tent the defendant answered that the tent arrived too late for use at the fair, alleged damages, and expressly stated that the defendant had taken possession of the tent and was holding it to secure such damages. On the trial the defendant's testimony was that it received the tent for the sole purpose of holding it until it collected damages for the plaintiff's failure to deliver in time.

The court refused to instruct the jury that the option to lease was no longer in the case, and so framed its instructions that the jury might defeat the plaintiff by finding either that the option to lease had been exercised or that the goods had been accepted merely for the purpose of holding them for damages. In this the court committed error.

When the goods were delivered the defendant was confessedly aware of the extent and consequences of the delay and was under the legal duty either to accept them and carry out one or the other branch of the contract or to disaffirm the contract and reject them. Disaffirmance after receiving the goods involves the duty either to return them or to hold them subject to the seller's order. The law of sales recognizes no such self-executing kind of attachment as "holding for damages." (*Shear Co. v. Thompson,* 72 Kan. 432, 83 Pac. 988.)

There was no room for equivocation upon the proposition that the defendant did not accept the goods as leased for a week. Defendant's answer stated that its offer at the beginning was for a tent for the specific purpose of use at the fair; that the fair week had already substantially passed when the tent arrived; that it could not use the tent at the fair, and that it notified the plaintiff that it held the tent for damages.

Its evidence was that when the tent arrived it was accepted and held, not as leased for a week, but solely for damages. The plaintiff pleaded a sale and not a lease, so that there was and could be no issue upon the matter. Therefore the court should have taken the option to lease out of the case by a suitable instruction.

On the other hand, the defendant could not admit that it purposely deprived the plaintiff of the goods and at the same time deny liability for the price. It is of the essence of the buyer's right to disaffirm the contract and reject the goods that dominion over them shall be repudiated. They must be returned or held subject to the seller's order. The buyer being under the duty either to affirm or disaffirm, can do nothing incompatible with the right to disaffirm and avoid the consequences of an affirmance. The law intends to leave no room for shiftiness at this point in the negotiation of a sale.

The case most frequently presented is the dubious one of mere silence or inaction for a period of time. But in this instance the buyer, as declared in its pleading and reasserted in its evidence, deliberately determined to do that which destroyed the right to disaffirm. It obtained the goods through the contract; it could lawfully keep them only by virtue of the contract; and when it elected not to reject the goods, not to return them, not to hold them for the seller, it elected not to disaffirm the contract.

A buyer cannot, by arbitrarily characterizing his possession, or by adding defiance to it, oblige the seller to forego his remedy for the price and drive him, against his will, to the more undesirable one of replevin or an action for damages. The law attaches to the buyer's determination to take and keep possession of goods received under a contract the correlative duty of paying for them according to the contract if the seller elects to enforce it.

The case of *Brown v. Foster et al.*, 108 N. Y. 387, 15 N. E. 608, is instructive upon the questions involved

here. Machinery for a sawmill, the subject of a contract of sale, was delivered by the seller and was rejected by the buyer as unsatisfactory. The buyer, however, at his own request, was given permission to use it until the seller's manager reached the place. The manager made alterations and the buyer then continued to use the machinery for nearly three months, and until the close of the season's business, although he continued to find fault. The buyer then dismantled the machinery, stored it for the seller and sought to elect to have his use of the machinery treated as a trespass. The court, after holding that the declaration by a buyer of a refusal to accept does not override acts of acceptance, and that if a buyer desires to reject he must do nothing inconsistent with the vendor's ownership, said:

"Nor can he, as is suggested, elect to have his use of the machine after complaint made treated as a trespass. He had received the consideration on which his promise to pay depended, and the obligation so incurred could be discharged only by performance. If an omission of that duty gives occasion for an action, its nature cannot be determined at his choice. He could not require the defendant [vendor] to treat the use of the machine as a tort, and be satisfied with damages as for a conversion. If in favor of either such right of election existed, it was because of the plaintiff's conduct and was cast upon the vendor, but he might very well refuse to regard as unlawful an act which came directly within the contract, and the accomplishment of which was on the vendee's part its sole object." (Page 391.)

Under the rule in this state the acceptance of goods tardily delivered does not waive the right to recoup damages occasioned by the delay, and the plaintiff's request for an instruction based upon a contrary principle was rightly refused.

A preliminary motion looking to the dismissal of the proceeding in error is denied.

The judgment of the district court is reversed and the cause is remanded for a new trial.