No. 27,853.

THE PEABODY SCHOOL FURNITURE COMPANY, *Appellee*, v. THE STEEL
FIXTURE MANUFACTURING COMPANY, *Appellant*.

(264 Pac. 27.)

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Review of Findings and Evidence—Necessity of Presenting Evidence*. When a case is tried to the court, who makes findings of fact and conclusions of law, and the evidence is not brought to this court by transcript or abstract, the contention that the findings are contrary to the evidence cannot be raised on appeal.

2. SALES—*Quality of Goods Delivered—Compliance with Specifications Between Buyer and Third Party*. One who agrees, for a stated price, to manufacture and deliver certain furniture to a buyer, and who manufactures and delivers the same in conformity to his contract, cannot be deprived of the right to recover the contract price by reason of the fact that the furniture did not comply with specifications of a contract between the buyer and a third party.

3. SAME—*Acts Constituting Acceptance—Retention and Use*. When a buyer of goods who might have declined to accept goods because of patent defects, visible at the time they were received, did not do so, but took possession of them and treated them as his own and used them for some months and marred and disfigured them so that they could not be returned in the condition they were received, the acceptance of the goods is complete, and he cannot after that time exercise his right not to receive them.

Appeal from Shawnee district court, division No. 3; OTIS E. HUNGATE, judge. Opinion filed February 11, 1928. Affirmed.

*T. F. Garver* and *James E. Larimer*, both of Topeka, for the appellant.

*Edwin A. Austin, John M. Williams* and *Arthur F. Davis*, all of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for the price of furniture alleged to have been sold by plaintiff to defendant. It was tried to the court, who made findings of fact and conclusions of law and rendered judgment for plaintiff. Defendant has appealed. The story of the controversy is told by the court's findings, as follows: ·

"1. In 1922, the board of county commissioners of Rooks county, Kansas, was constructing a new courthouse at Stockton, Kan., in accordance with the plans, drawings and specifications prepared by the architect, Frank Squires, of Topeka, Kan. The defendant entered into a contract with the said board

Acceptance, 1 C. J. p. 378 n. 88. Appeal and Error, 4 C. J. p. 535 n. 8. Sales, 35 Cyc. pp. 259 n. 58, 402 n. 45; 36 L. R. A. n. s. 476; 24 R. C. L. 293.

Peabody School Furniture Co. v. Steel Fixture Mfg. Co.

of county commissioners to furnish certain equipment for the courthouse, including twenty-four benches, and the specifications of the architect provided in detail for the kind of lumber and finish to be used, as well as the construction of the benches. The defendant contracted with the board to furnish and install these benches according to said plans and specifications.

"2. The plaintiff was a corporation doing business at Topeka, Kan., engaged in selling school furniture and supplies, including benches and pews. It was not engaged in the manufacture of benches, but was a jobber of benches and other furniture manufactured by other companies.

"3. In April, 1922, defendant informed plaintiff that it, defendant, intended to submit a bid for a contract with the board of county commissioners, and submitted to plaintiff two blue prints, one showing the floor plan of the court room and the other showing the dimensions and the side and end elevation of the benches. At the same time defendant also submitted to plaintiff a typewritten paper cut from a page of a copy of the specifications prepared by the architect, which paper contained certain specifications of the construction of the benches. This paper specified:

" 'BENCHES. The court-room benches will be of oak *as before specified,* ends to be five-ply, veneered on cores with exposed surfaces of quarter-sawed oak. Backs and seats to be of elm with oak finish at top and back. All benches to be shipped set up from factory. Bodies will be gained and glued into ends; seats gained and glued into backs. Seats to have three-inch apron secured by long screws and glue blocks.'

"No other part of the plans and specifications prepared by the architect other than the two blue prints and typewritten paper mentioned in this finding were ever furnished by defendant to plaintiff and the officers and agents of plaintiff, while they could have seen such full plans and specifications upon inquiry and effort, never did see any other part of the plans and specifications of the courthouse and its equipment.

"4. The defendant requested plaintiff to submit to it a quotation of prices for which plaintiff would furnish the defendant twenty-four benches in accordance with the description and detail of the same contained in the two *blue prints and typewritten paper* before mentioned, and on April 26, 1922, plaintiff quoted to defendant a price of $1,075 for four 17-foot benches and twenty 12-foot benches to be delivered to carrier at Waukesha, Wis., knocked down.

"5. Before this price was quoted the defendant by plaintiff, defendant's manager had been shown a catalogue of furniture manufactured by the Manitowoc Church Furniture Company of Waukesha, Wis., which company was engaged in the manufacture of furniture of this kind. This catalogue showed a pew body, No. 50, which had a back of three-ply construction and constructed with a compound curved back with a heavy, shaped-out-seat; the catalogue also showed a pew end, No. 851, Colonial style, two- or three-ply in thickness, with heavy solid base. The cut of the pew end in the catalogue showed a form somewhat similar to that shown in the blue print furnished plaintiff by defendant, but did not show two grooves cut around the outside of the end as shown in the blue print, and that base as shown in the catalogue cut was to rest on the floor, while the blue print showed the end of the base cut so as to fit into a marble base.

"6. At the time plaintiff quoted its prices to defendant, defendant knew that plaintiff would order the benches from the Manitowoc Church Furniture Company, the same to be manufactured by that company and in accordance with the blue prints and typewritten paper furnished plaintiff by defendant.

"7. On July 13, 1922, defendant verbally ordered from plaintiff twenty 12-foot pews and four 17-foot pews to be constructed in accordance with the two blue prints and the typewritten paper before mentioned, and that the four 17-foot pews should have three 4-inch division centers, and that they should be shipped knocked down.

"8. On July 15 defendant, by letter, purported to confirm its verbal order as follows:

"'You are to ship to Stockton twenty 12-foot pews and four 17-foot pews, five-ply, according to drawings and specifications, with the exception where elm is specified on the architect's specifications white quarter-sawed oak is to be furnished. Your price to us on these pews is one thousand seventy-five dollars ($1,075), freight allowed to Stockton, as quoted in your letter of April 26. We will furnish you within a few days with a sample of the white-oak finish desired on the pews. In the meantime it is understood that you will make a drawing of the pew feet which we can submit to the marble contractor for the grooving of the marble base. This order is to be shipped to us at Stockton marked for Mrs. Eades, county clerk. The cutting of the pews need not be held up, as we imagine it will be a little while before you will be ready for the sample of finish.'

"9. On July 13, 1922, plaintiff sent to defendant an acknowledgment of the receipt of the verbal order theretofore made by defendant to plaintiff in which acknowledgment it was stated that the Peabody School Furniture Company had sold to the Steel Fixture Company, Topeka, Kan., twenty 12-foot pews, four 17-foot pews, $1,075, terms cash, F. O. B. factory, the same to be shipped to the Steel Fixture Company for county courthouse, Mrs. Eades, county clerk, at Stockton, Kan.

"10. Between July 15, 1922, and December 15, 1922, the construction of the benches as specified in the typewritten paper submitted to plaintiff by defendant, as found in finding No. III, was modified, altered and changed by the parties by correspondence in that on December 15, 1922, plaintiff was ordered and directed to deliver to defendant four 17-foot pews and twenty 12-foot pews and the ends of which were to be four-ply in place of five-ply, with quarter-sawed oak faces, the seat to be of elm and the backs of plain oak in place of elm. The finish was to be in accordance with a small color block which was delivered by the defendant to plaintiff and the benches were to be delivered to defendant, F. O. B. carrier at Waukesha, Wis., knocked down and crated.

"11. The color block referred to in finding No. X, and which was furnished by defendant to plaintiff, was of light-colored oak wood and finished in light golden oak, there being no stain applied in the varnish and the block was finished so that it showed the grain of the oak, its texture and without concealment. It was the intention of the parties that the color block should not only control the character of varnish and other finish applied to the wood and the manner of its application, but also that the benches should be constructed of woods which were approximately of the color of the wood of which the color block was made.

Peabody School Furniture Co. v. Steel Fixture Mfg. Co.

"12. The verbal order made by defendant to plaintiff in July, 1922, as confirmed by the written confirmation of the defendant and as accepted by the plaintiff by its acknowledgment of July 13, and the correspondence between plaintiff and defendant thereafter, which provided for modifications in the manner of the construction of the pews, did not provide that the pews to be furnished by plaintiff to defendant were to be subject to approval by Frank Squires, the architect, or by the board of county commissioners of Rooks county, Kansas, nor were there any requirements mentioned in reference to the benches equaling a 'Garnett sample.'

"13. The Manitowoc Church Furniture Company, on the order of plaintiff, manufactured four 17-foot benches and twenty 12-foot benches and shipped the same knocked down and crated to defendant at Stockton, Kan., and they arrived there early in February, 1923. These benches were constructed of seasoned lumber and in a reasonably good and workmanlike manner and the finish applied was of the character of that shown by the color block. The ends were four-ply with quarter-sawed white oak faces; the inside of ends plain sawed oak to conform to backs, seats of elm and backs of plain sawed oak with plain oak apron and oak molding on the top of backs; division ends were furnished for the four 17-foot benches and middle supports for the twenty 12-foot benches.

"14. The inside and outside of the ends were constructed by placing different panels of wood edge to edge, and except as hereinafter found, these panels were of substantially the same color, i. e., as finished, the whole side of the end was all of substantially the same color, that is, of a golden-oak color. There were forty-eight ends and of these two had one quite dark panel each, which showed in marked contrast to the color of the balance of the panels in the end and six had slightly discolored panels in the ends, while two of the ends on one of the two sides thereof had a few dark spots in the wood of one panel and two had small, narrow dark streaks in one of the panels in the end.

"15. When the pews arrived in Stockton in February, 1923, they were crated, and they were removed to the courthouse where they were uncrated by an agent of the defendant, when the texture and color of the woods used and the matching of the same, construction and finish were patent and visible to the eye.

"16. The benches were put together by an agent of the defendant and set up by him in the court room in February, 1923. While thus assembling and setting up the benches this agent of the defendant was informed by one of the county commissioners that the benches were not satisfactory to the county and that they would not be accepted; and defendant's agent replied that he was working for the defendant, and that he had been ordered to put them up, and that he would do so. At that time the finish, color, texture of woods, matching of lumber and cabinet work became fully known to the board of county commissioners, and also became known to the defendant.

"17. In erecting the benches in the court room defendant cut off five feet of the back, seat and apron of one of the 17-foot benches.

"18. The ends of the benches had been grooved by the manufacturer at the bottom so as to fit into marble bases, and these benches were set into the

marble bases and remained as assembled and set up by defendant from some time in February, 1923, to December, 1923, and were used by the public, including two terms of the district court, from February, 1923, to December, 1923.

"19. The defendant, in assembling and setting up the benches did not glue the several parts together at the places where they should have been gained and glued together, but used nails furnished by plaintiff, and in driving the nails caused some of the backs and seats to be splintered, and marred some of the surfaces with hammer marks.

"20. A portion of the back and seat of one of the benches was discolored at the time of the trial, the same having the appearance of being caused by water or exposure to the weather. Whether this condition existed at the time the benches arrived at Stockton and were examined the court is unable to determine, but if the bench was in this condition at its arrival its condition was patent and plainly visible to the eye.

"21. Soon after the erection of the pews the board of county commissioners complained to the defendant that the benches did not comply with the specifications of the architect, and about the same time defendant made complaint to plaintiff that the pews as furnished did not comply with the contract between plaintiff and defendant.

"22. On the 5th of April, 1923, by letter, the board of county commissioners notified the defendant that the benches did not comply with the contract between defendant and county and that the benches did not equal 'the Garnett sample,' a sample bench which had been shown to the board of county commissioners at the time it let its contract for the benches to the defendant, but of which 'Garnett sample' plaintiff had no notice or knowledge until after the benches had been installed; and the board demanded that 'definite action be taken by your firm to replace these benches according to specifications, contract and sample as to finish, construction and material,' and called upon the defendant for information as to the disposition to be made of the benches.

"23. On March 14, 1923, defendant notified plaintiff that pews had been condemned and rejected by the board of county commissioners chiefly because of green lumber, and in addition that they did not nearly match in any way the wood sample furnished plaintiff by defendant; also that the backs were elm instead of oak, and that inside of ends were flat-sawed instead of quarter-sawed, and that the commissioners were insisting that the pews be replaced with pews according to specifications and according to the order which defendant had placed with plaintiff.

"24. The defendant never, before August, 1923, notified plaintiff that it would not accept the pews, and plaintiff at no time promised to replace the pews with others or to make any repairs on or to refinish the same to meet any requirements of the defendant or the board of county commissioners.

"25. The erection of the benches and their installation in the court room and the cutting of the back and seat of one of the 17-foot pews was without the knowledge or consent of plaintiff, and the retention and use of the pews in the court room was not caused by any act of plaintiff or by any promise or inducement held out to defendant by plaintiff.

"26. In December, 1923, the benches were taken out of the court room and taken apart and crated by defendant and shipped by it to the plaintiff at Topeka, Kan. Plaintiff has never accepted the return of the benches and the same have been kept in storage at Topeka under a stipulation entered into between the parties."

The court made three additional findings setting out more fully the correspondence between the parties, which need not be set out. The court made the following conclusions of law:

"1. The submission of the two blue prints and the typewritten paper to plaintiff by defendant, and defendant's request for plaintiff to submit a price for which it would deliver to defendant the benches shown by the blue prints and typewritten paper, the submission by plaintiff to defendant of its prices for such pews, in which it quoted a net price of one thousand seventy-five ($1,075) dollars, F. O. B. factory at Waukesha, Wis., knocked down, the verbal order of defendant to plaintiff for the pews, with defendant's written confirmation of July 15, 1922, the plaintiff's written acknowledgment of the receipt of the verbal order for the pews, in which it was stated that plaintiff had sold to defendant the pews ordered for one thousand seventy-five dollars, the correspondence had between the parties up to and including December 15, 1922, modifying the details of construction of the benches from that ordinarily shown by the two blue prints and the typewritten paper, constituted a contract between the parties, by which the plaintiff agreed to sell and deliver to defendant four 17-foot benches and twenty 12-foot benches, and defendant agreed to buy said benches and pay plaintiff one thousand seventy-five ($1,075) dollars for the same, and the final conditions of said contract were that there should be delivered by plaintiff to defendant four 17-foot benches and twenty 12-foot benches, that there should be forty-eight pew ends and four division ends for the 17-foot benches and back supports for the 12-foot benches; that the benches be shipped knocked down, that the ends were to be four-ply, the pew ends made with quartered oak face, the backs of plain oak and the seats of elm, and that the pews should match in color and quality of finish the sample color block which had been submitted by defendant to plaintiff; and it was agreed between the parties that the price of one thousand seventy-five dollars for the pews was on board cars at Waukesha, Wis., and that the pews should be shipped to defendant at Stockton, Kan.

"2. On account of the eight ends of the forty-eight pew ends furnished having dark-colored panels, whereby the end did not match the color block in color, four of the benches delivered did not comply with the conditions of the contract. The remaining twenty benches were in substantial compliance with the contract in material, construction, color and finish.

"3. Such defects as were in the benches shipped to defendant, and the matters in which any of the benches failed to comply with the conditions of the contract, being all defects and variations patent and apparent to the eye upon inspection before the benches were put together and set up, and the defendant at the time the benches were received at Stockton having reasonable

opportunity to inspect the benches before they were put together and installed, and no trial or use of the benches being necessary for the defendant to determine whether the benches complied with the contract, the assembling of the benches and installing them in the court room, nailing the same together and not using glue to put the parts of the benches together, as was intended and shown by the construction, the sawing of five feet off the back and seat of one of the 17-foot benches and allowing the benches to be used from February to December by the public in the court room, including two terms of the district court, which conduct of defendant; and the use of the benches were not caused, excused or justified by any act, promise or inducement of plaintiff to defendant, constituted an acceptance of the benches by the defendant, and it thereby became liable to plaintiff for the agreed purchase price of one thousand seventy-five ($1,075) dollars. . . ."

It is first argued that the findings of the court, in some respects, are contrary to the evidence. Appellant is not in position to urge that question, for the reason that the evidence has not been transcribed nor abstracted. The case is here on the pleadings and the findings, conclusions and judgment of the court. The only legal question before us is whether the conclusions of law and judgment thereon are supported by the findings of the court, considering the claims of the parties as alleged in the pleadings.

Appellant contends that, since the petition alleged and the court found that the benches were to be manufactured for furnishing the new courthouse there was an implied contract that they would be suitable for that purpose, citing and relying on the doctrine announced in *Nixa v. Lehmann,* 70 Kan. 664, 79 Pac. 141; *Kaull v. Blacker,* 107 Kan. 578, 193 Pac. 182; 35 Cyc. 401. This contention does not correctly interpret the findings of the court. It is true, of course, that the benches were manufactured for use in the new courthouse, and plaintiff understood that. But that alone is not controlling here. Plaintiff had the benches manufactured in accordance with plans and specifications submitted to it by defendant, later modified and agreed upon between plaintiff and defendant. It developed that the plans and specifications so agreed upon between plaintiff and defendant did not accord with the plans and specifications for such benches contained in the contract between defendant and the board of county commissioners, and plaintiff was not informed of that fact until after the benches were manufactured and delivered. In other words, defendant contracted to furnish the board of county commissioners benches constructed according to specific plans and specifications, and ordered from plaintiff benches constructed according to different plans and specifications. The

rights of the parties to this action depend upon the contract between them. Plaintiff is not bound by provisions of the contract between defendant and the board of county commissioners of which it was not informed. It was plaintiff's duty to manufacture and deliver the benches in accordance with its contract with defendant, and when it did so it was entitled to pay from defendant in accordance with that contract.

The court found four of the benches delivered did not comply with the conditions of the contract for the reason that they had dark-colored panels, did not match the color block, nor match in color with the other benches, and that the remaining twenty benches were in substantial compliance with the contract between plaintiff and defendant in material, construction, color and finish. Appellant argues that it should not have been required to receive and pay for these four defective benches, that the contract was for twenty-four benches, not for twenty, and all designed to be used in one room. No doubt defendant could have refused to accept the four benches when they were received; possibly might have refused to accept any of them because of the defective four. But it did not do so. The defects of the four benches were not latent defects, requiring time and use to discover; they were patent and visible to the eye. Notwithstanding these defects defendant did receive the benches, put them together, and set them up and used them, or caused them to be used, for months, and in doing so marred and disfigured them to some extent. So, whatever may have been defendant's right to have rejected the benches at the time they were received, such right was not exercised, and defendant's conduct was inconsistent with the exercise of such right.

Appellant contends that the court was not justified in concluding that defendant had accepted the benches as a compliance with its contract with plaintiff, and contends that simply the receipt of an article does not necessarily constitute an acceptance, citing *Craver v. Hornburg,* 26 Kan. 94. There may, of course, be a receipt of an article under such circumstances that would not constitute an acceptance, but it is clear that the receipt of an article with the intention to retain it does constitute an acceptance. (1 C. J. 378.) Generally, where a buyer has a right to disaffirm a contract and to decline to receive the goods he should exercise such right promptly. When the buyer retains and uses the goods as his own, and especially where in such use he mars and disfigures them without the knowledge

or consent of the seller, in such a way that they cannot be returned in the condition in which they were received, the acceptance is regarded as complete and he cannot thereafter be heard to say that he did not accept them. (35 Cyc. 259; *Tufts v. Mabie,* 7 Kan. App. 129; *Dougherty v. Implement Co.,* 75 Kan. 450, 89 Pac. 900.)

Lastly, it is argued that the use of the benches and delay in returning them was excused by the circumstances. It is true that when plaintiff learned that the board of county commissioners were objecting to the benches because they did not conform with the specifications contained in defendant's contract with such board, plaintiff proposed to reconstruct or refinish the benches so they would comply with such contract, the additional expense of such work to be paid by defendant. But that was never agreed to by defendant nor by the board of county commissioners. It did not bar plaintiff's right to recover the price of the benches it manufactured for defendant in accordance with plaintiff's contract with defendant.

The judgment of the court below is affirmed.